IN THE UNITED STATES DISTRICT COURT
FOR THE WESTERN DISTRICT OF TENNESSEE
EASTERN DIVISION

| | | |
|---|---|---|
| CLARA MARTINEZ, | ) | |
| | ) | |
| Plaintiff, | ) | |
| | ) | |
| VS. | ) | No. 1:05-1112-T |
| | ) | |
| JO ANNE B. BARNHART, | ) | |
| the Commissioner of Social Security, | ) | |
| | ) | |
| Defendant. | ) | |

ORDER AFFIRMING A FINAL DECISION OF THE COMMISSIONER OF SOCIAL
SECURITY PURSUANT TO 42 U.S.C. § 405(g)

Plaintiff, Clara Martinez, seeks judicial review of a final decision of the

Commissioner of Social Security denying Plaintiff's applications for social security disability

insurance benefits and supplemental security income benefits under Title II and Title XVI

of the Social Security Act (the "Act"), as amended.  On November 8, 2001, Plaintiff applied

for disability insurance benefits pursuant to Title II of the Act, 42 U.S.C. § 401, *et. seq.*, and

for supplemental security income benefits pursuant to Title XVI of the Act, § 1381, *et. seq.*

Her recommended onset date was June 20, 2000.  (Court Transcript "Tr." at 94).[1]  The

---

[1]Plaintiff had filed previous benefits applications on January 14, 1999, alleging an onset date of October 15, 1995.  (Tr. at 30).  On June 19, 2000, an administrative law judge determined that Plaintiff was not entitled to benefits for any period through the date of his decision.  (Tr. at 38).  The Commissioner denied additional review, and the agency's adverse action became final on July 26, 2002.  (Tr. at 16).  Plaintiff did not seek judicial review of the Commissioner's decision denying his 1999 applications.  At the 2004 hearing on Plaintiff's 2001 applications, the Administrative Law Judge concluded that *res judicata* precluded him from disturbing the factual issues that were resolved by the agency in connection with Plaintiff's 1999 applications.  (Tr. at 16).  Plaintiff does not contest this aspect of the decision below.

Commissioner denied both applications initially and upon Plaintiff's request for reconsideration.  (Tr. at 42–45, 830–842).  On July 14, 2004, an Administrative Law Judge ("ALJ") held a hearing at which Plaintiff, Plaintiff's mother, and a vocational expert appeared and testified.  (Tr. at 844–873).  On December 2, 2004, the ALJ issued a written opinion determining that Plaintiff could perform her past relevant work and, therefore, was not disabled under the Act.  (Tr. at 15–23).  The ALJ's decision became final when, on February 23, 2005, the Appeals Council of the Social Security Administration denied Plaintiff's request for further agency review.  (Tr. at 6–8).

For the following reasons, the Commissioner's final decision is AFFIRMED.

## I.

Sections 405(g) and 1383(c)(3) of the Act permit unsuccessful social security claimants to obtain judicial review of "any final decision of the Commissioner made after a hearing."  Act, § 405(g); *see also id.*, § 1383(c)(3).  The scope of review is limited, however, to determining whether the Commissioner's findings are supported by substantial evidence in the administrative record as a whole and whether the Commissioner applied the correct legal standards.  *Longworth v. Comm'r of Soc. Sec.*, 402 F.3d 591, 595 (6th Cir. 2005) (quoting *Warner v. Comm'r of Soc. Sec.*, 375 F.3d 387, 390 (6th Cir. 2004) (in turn quoting *Walter v. Comm'r of Soc. Sec.*, 127 F.3d 525, 528 (6th Cir. 1997)).  Substantial evidence is defined as "such relevant evidence as a reasonable mind might accept as adequate to support

---

Plaintiff also does not take issue with the decision in this case that she was "insured [for disability benefits purposes] only through March 31, 2002 . . . . [and] must establish that she was under a disability on or before that date."  (Tr. at 15).

a conclusion." *Consol. Edison Co. v. NLRB*, 305 U.S. 197 (1938). "[E]ven if there is substantial evidence in the record that would have supported an opposite conclusion[,]" the court must affirm the Commissioner's decision if supported by substantial evidence. *Longworth*, 402 F.3d at 595 (quoting *Warner*, 375 F.3d at 390) (in turn quoting *Key v. Callahan*, 190 F.3d 270, 273 (6th Cir. 1997)).

The Act defines disability as the inability to engage in substantial gainful activity due to a "physical or mental impairment which can be expected to result in death or which has lasted or can be expected to last for a continuous period of not less than 12 months." Act, § 423(d)(1)(A), § 1382c(a)(3)(A). The Commissioner determines if an individual satisfies the statutory definition of disability by conducting the familiar five-part sequential analysis set forth in 20 C.F.R. § 404.1520 and § 416.920:

1. An individual who is engaging in substantial gainful activity will not be found to be disabled regardless of medical findings.
2. An individual who does not have a severe impairment will not be found to be disabled.
3. A finding of disability will be made without consideration of vocational factors if an individual is not working and is suffering from a severe impairment which meets the duration requirement and which meets or equals a listed impairment found in 20 C.F.R. Part 404, Subpart. P, Appendix 1.
4. An individual who can perform work that he has done in the past will not be found to be disabled.
5. If an individual cannot perform his past relevant work, other factors including age, education, past work experience, and residual functional capacity will be considered to determine if other work can be performed.

If the Commissioner determines that an individual is not disabled at any one step in this sequence, the Commissioner will deny benefits without proceeding to the next step. 20 C.F.R. §§ 404.1520(a), 416.920(a); *Hogg v. Sullivan*, 987 F.2d 328, 331 (6th Cir. 1989).

Step four, upon which the ALJ rested his decision in this case, allocates the burden to the social security claimant to prove an inability to perform past relevant work. *Bowen v. Yuckert*, 482 U.S. 137, 146 n.5 (1987); SSR 82-61.

Analysis at step four requires determining the claimant's residual functional capacity ("RFC"). 20 C.F.R. §§ 404.1545(a)(5)(i), 416.945(a)(5)(i). RFC refers to the "most that [a claimant] can still do despite [the claimant's] limitations." §§ 404.1545(a)(1), 416.945(a)(1). To constitute a relevant "limitation," it is not necessary for a particular condition to qualify as a "severe impairment" under step two; instead, if a claimant has at least one "severe impairment," then all of the claimant's "medically determinable" physical and mental impairments may be taken into account for the purpose of arriving at an accurate RFC. §§ 404.1545(e), 416.945(e). Pain, fatigue, and similar subjective symptoms, if credited, are also relevant elements of an RFC determination. §§ 404.1545(e), 416.945(e); *see also* §§ 404.1529(c), 416.929(c).

Plaintiff alleged disability because of: severe, brittle diabetes; coronary artery disease; clinical depression; diabetic neuropathy; fatigue; asthma; limited sight; limited hearing; pain; trouble breathing; headaches; anxiety; daily vomiting; a short memory; and mood changes. (Tr. at 85). Her past relevant work experience, according to the vocational expert who testified at Plaintiff's hearing, included employment as an assembler, secretary, receptionist, grocery sales clerk, bank teller, drug store sales clerk/cashier, factory worker, spot welder, fry cook, and dishwasher. (Tr. at 22, 851). These jobs ranged from semiskilled and medium to unskilled and sedentary. (Tr. at 22).

4

The ALJ held a hearing on July 14, 2004.  (Tr. at 844–873).  He determined that:

1.  The claimant met the nondisability requirements for a period of disability  and disability insurance benefits set forth in . . . the Act and was insured for benefits through March 31, 2002, but not thereafter.

2.  The claimant has not engaged in substantial gainful activity since June 20, 2000.

3.  The claimant has the following "severe" impairments: coronary artery disease status post coronary artery bypass, diabetes mellitus, and a depressive disorder.

4.  These medically determinable impairments do not meet or medically equal one of the listed impairments in Appendix 1, Subpart P, Regulation No. 4.

5.  The claimant's allegations regarding her limitations are not totally credible for the reasons set forth in the body of the decision and are not supported by the evidence as a whole.

6.  The claimant has the residual functional capacity to lift and/or carry 25 pounds frequently and 50 pounds occasionally; sit for a total of about 6 hours in an 8 hour day; stand and/or walk for a total of about for 6 hours in an 8 hour day; frequently climb, balance, stoop, kneel, crouch, crawl, push, pull, or reach.  The claimant retains the ability to perform the basic mental demands of competitive, remunerative work on a sustained basis which includes the ability to understand, carry out, and remember simple instructions; respond appropriately to supervision, coworkers, and usual work situations; and deal with changes in a routine work setting.

7.  *The claimant is able to perform the physical and mental requirements of her past relevant work as an assembler, secretary, receptionist, sales clerk, teller, cashier, factory worker, welding machine operator, fry cook, and dishwasher.*

8.  The claimant was not under a "disability" as defined in the . . . Act, at any time through the date of the decision . . . .

(Tr. at 22–23) (emphasis added).[2]  Plaintiff argues (1) the ALJ improperly disregarded the

opinions of two treating physicians, a physician's assistant, a nurse practitioner, and a state

---

[2]Plaintiff, acknowledging that the ALJ's credibility determinations are entitled to great weight, does not challenge the ALJ's finding that Plaintiff's "allegations regarding her limitations" were exaggerated.  Plaintiff instead believes that, regardless of the testimony, the other evidence of record is sufficient to establish a finding of disability.

agency consultant; (2) the ALJ improperly trivialized Plaintiff's mental limitations; and (3) the ALJ's hypothetical examination of the vocational expert was tainted by (1) and (2).  On these bases, Plaintiff contends the ALJ's final decision at step four was not supported by substantial evidence.

The court concludes that any errors in this case were harmless, and affirms because the ALJ's step four decision is supported by substantial evidence that Plaintiff could perform her past relevant work as a secretary or receptionist.

II.

A.

Plaintiff first contends that the ALJ rejected the "assessments" of her "treating physician, treating physician's assistant, and treating nurse practitioner because they were done at Plaintiff's request."  Pl.'s Br. at 6.  The court agrees with Plaintiff that the ALJ erred to the extent he disregarded these letters because Plaintiff sought them in the context of a claim for benefits.  In the court's view, Plaintiff's request was irrelevant to the legitimacy of the assessments in question.  The problem for Plaintiff, however, is that not one of the three brief letters contradicted the ALJ's step four physical RFC finding.

On October 17, 2001, Stan King, P.A., wrote a "To Whom It May Concern" letter stating that, "Ms. Martinez is being treated for insulin dependent type I diabetes and coronary artery disease.  She is currently in poor[3] health with recurrent exacerbations secondary to her

---

[3]Someone had initially typed "fair," but that was crossed out and "poor" was substituted with an ink pen. Although the ALJ noted this alteration, (Tr. at 18), there is no indication in the opinion that the alteration was a factor in the ALJ's decision.  Also, for the reasons stated in the body of this order, even if the letter had always

diabetes." (Tr. at 484).  On Ocotber 17, 2001, Volker Winkler, M.D., wrote an identical "To Whom It May Concern" letter.  (Tr. at 327, 485).  It also stated that, "Ms. Martinez is being treated for insulin dependent diabetes and coronary artery disease.  She is currently in poor health with recurrent exacerbations secondary to her diabetes."  (Tr. at 327).  On May 15, 2002, Delia Rhinehart, C.F.N.P., wrote a "To Whom It May Concern" letter stating that, "Ms. Martinez's blood sugar is uncontrolled and causes fatigue.  Therefore, she is unable to work at the present time.  It is expected that she may be able to work once her blood sugar is controlled."  (Tr. at 506).  Plaintiff refers to each of these letters as "assessments" or "opinions" that the ALJ was bound to follow at step four.  Pl.'s Br. at 6–7.

The first two letters bore very little, if any, significance to the issue of how Plaintiff's "poor health," diabetes, secondary exacerbations, and heart disease actually affected her ability to perform "substantial gainful activity."  The ALJ acknowledged that Plaintiff had been diagnosed with diabetes mellitus and coronary artery disease, (Tr. at 16), but he ultimately had to answer the crucial question of whether those established impairments prevented Plaintiff from performing her past relevant work.  The statements that Plaintiff's health was "poor" and that she was having "recurrent exacerbations" certainly did not provide a definitive answer to that question.  (Tr. at 18).  Thus, Plaintiff's suggestion that these two letters somehow satisfied, or even contributed to the satisfaction of, Plaintiff's step four burden is without merit.  *C.f. Landsaw v. Sec'y of Health & Human Servs.*, 803 F.2d

---

referred to Plaintiff's health as "poor," that generalization would not have contradicted the ALJ's decision and certainly would not require reversal.

211, 213 (6th Cir. 1986).

With regard to the nurse practitioner, Delia Rhinehart, even though she was a source whose views were entitled to some respect, in this case her letter also lacked the probative value necessary to require the ALJ to find Plaintiff unable to perform her past relevant work. First, the nurse practitioner's statement that Plaintiff was "unable to work" was not a "medical opinion" within the meaning of the Commissioner's regulations.  20 C.F.R. § 404.1527(a)(2) & (e).  The issue of whether a particular claimant is "able to work" is an issue Congress delegated to the Commissioner.  *C.f. Landsaw*, 803 F.2d at 213 (6th Cir. 1986); *see also infra* Part II.B. at 10 (discussing an alternative reason why Rhinehart's statement was not a "medical opinion" under the regulations).  Second, even if the nurse practitioner's statement had been a "medical opinion," the ALJ correctly found that it was not definitive for a limitation of function that had lasted or would last for a period of *twelve months* or more.  (Tr. at 21); Act, § 423(d)(1)(A), § 1382c(a)(3)(A).  Instead, the letter suggested that, while Plaintiff could not work "*at the present time*," the nurse practitioner "expected that [Plaintiff] may be able to work once her blood sugar is controlled."  (Tr. at 506) (emphasis added).

In sum, the court agrees with Plaintiff that the ALJ improperly considered the fact that these three letters were written at Plaintiff's request in connection with her disability claim. The court concludes, however, that the letters would not have been entitled to any special weight, if any, and would not have changed the outcome even if the ALJ had not considered the forbidden factor.  At the most, the letters would have confirmed Plaintiff's diagnoses,

8

confirmed that her health was "poor," and suggested that her blood sugar levels were "uncontrolled" for an unspecified period of time.  But the ALJ never disputed Plaintiff's diagnoses, or whether or not her health had been "poor," or whether her glucose levels had been "uncontroll*ed*."  Rather, he found that Plaintiff could perform her past relevant work notwithstanding her diagnoses, her poor health, and her sometimes uncontrolled glucose levels.  Because nothing in the "To Whom It May Concern" letters either supports or contradicts that conclusion, Plaintiff's reliance on those letters as grounds for reversal simply misses the point.

B.

Plaintiff next seeks reversal in reliance on an August 1, 2000 "Medical Assessment of Ability to do Physical Work Related Activities" that was prepared by Stan King, P.A.  (Tr. at 324).  King's assessment opined that Plaintiff's "uncontrolled diabetes with peripheral neuropathy complaint[s]" limited Plaintiff to standing and/or walking for no more than a total of one hour in an eight hour day.  (*Id.*).  He further stated that, due to "uncontrolled diabetes with peripheral neuropathy and degenerative arthritis involving knees," Plaintiff could not kneel or crawl; and, she could only occasionally climb, stoop, balance, or crouch.  (*Id.*).  The neuropathy, in King's opinion, also caused decreased sensation in Plaintiff's right hand.  (Tr. at 325).  Finally, King noted that Plaintiff was "subject to syncopal episodes secondary to uncontrolled diabetes with occasional hypoglycemia."  (Tr. at 326).

As noted, to the extent the ALJ considered the fact that King's assessment was made "in response to a request by the claimant," (Tr. at 21), this was error.  The Commissioner

9

argues, however, that the ALJ rejected this assessment, not solely because Plaintiff requested it, but because it was not definitive, and because it was not compelled by the medical findings.  Comm'r Br. at 3–4.  The Commissioner also points out that, as a physician's assistant, King's assessment was not entitled to the same weight that would have been afforded to a treating physician's medical opinion.  *Id.* at 4.  The court considers the Commissioner's second point first.

It is well settled that, "[a]n ALJ must give the opinion of a treating source controlling weight if he finds the opinion 'well supported by medically acceptable clinical and laboratory diagnostic techniques' and 'not inconsistent with the other substantial evidence in [the] case record." *Wilson v. Comm'r of Soc. Sec.*, 378 F.3d 541, 544 (6th Cir. 2004) (citing 20 C.F.R. § 404.1527(d)(2)) (second alteration in original).  At first glance, this principle suggests that, given King's lengthy treatment relationship with Plaintiff, his opinion regarding her physical limitations was entitled controlling weight if supported by the underlying medical record. The "treating source rule," however, only mandates such deference when a "medical opinion" is in question.  *See, e.g., Craig v. Comm'r of Soc. Sec.*, No. 96-3721, 1997 U.S. App. LEXIS 15536, at *6 (6th Cir. June 25, 1997) (unpublished opinion); *see also* 20 C.F.R. § 404.1527(d) (prescribing how the agency evaluates "medical opinions").  "Medical opinions are statements from physicians and psychologists or other *acceptable medical sources* that reflect judgments about the nature and severity of [the claimant's] impairment(s), including . . . symptoms, diagnosis, and prognosis, what [the claimant] can still do despite the impairment(s), and [the claimant's] physical or mental restrictions."  20

10

C.F.R. § 404.1527(a)(2).  Physician's assistants are not, in the Commissioner's view, "acceptable medical sources."  20 C.F.R. § 404.1513(a)(1)–(5), (d)(1) (listing physician's assistants and nurse practitioners as "other sources").  Accordingly, although King's medical assessment should not have been disregarded completely simply because King was a physician's assistant, *see, e.g.*, 20 C.F.R. § 404.1513(d) (stating that the agency *may* use opinions from "other sources" to determine the severity of a proved impairment and its functional impact); *Covucci v. Apfel*, 31 Fed. App'x 909, 913 (6th Cir. April 3, 2002) (unpublished memorandum opinion) ("Long's lack of a medical degree does not render his opinion inadmissible[]"), the treating source rule had no bearing on the ALJ's decision to reject that assessment in the instant case.

Having disposed of the "treating source" issue, the court finds that it must give deference to the ALJ's conclusion that King's August 2000 medical assessment was not definitive and otherwise was not mandated by the medical findings.  (Tr. at 21).  King's assessment referred to Plaintiff's glucose levels as "uncontroll*ed*," (Tr. at 324–326), and the record contains an abundance of medical findings that support the general conclusion that Plaintiff's blood sugar levels were, in fact, erratic.  (*See, e.g.*, tr. at 356, 410, 409, 408, 407, 406, 405, 404, 403, 677, 332, 534, 574, 562, 594, 685, 693, 552, 694, 698, 703, 640, 635).  The record also documents the symptoms of Plaintiff's fluctuating insulin levels, such as fatigue and nausea, (Tr. at 132–33), and occasional syncopal episodes, (Tr. at 332, 552, 545, 562, 594).  The record also contains, however, references to Plaintiff's "poor compliance"

with the recommended courses of controlling her blood sugar. (*See, e.g.*, tr. at 400, 594, 534, 499, 734, 736). King's assessment and his strict limitations of function do not refer to, and indeed beg the question of, the relevance of Plaintiff's noncompliance with her diabetes treatment. (Tr. at 323–326).[4]

In addition to the unresolved issue regarding Plaintiff's noncompliance, there is other record evidence that the ALJ was entitled to rely upon in not accepting King's strict one-hour per day standing restriction at face value. For example, on December 19, 2001, Grafton H. Thurman, M.D., a consultative examiner with the Tennessee Disability Determination Services ("TDDS"), opined that Plaintiff had "*no* impairment related physical limitations." (Tr. at 273) (emphasis added). Although Dr. Thurman's assessment might be criticized as bordering on the opposite extreme, the remarkable gap between Dr. Thurman's and King's assessments suggests that Plaintiff's physical limitations were somewhere in the middle.

King's one hour restriction was also in sharp contrast with other more moderate assessments of Plaintiff's physical functional limitations performed by TDDS. These modest assessments also support the view that the physical limitations attributable to Plaintiff's diabetes-related conditions were neither as severe as King suggested, nor as nonexistent as Dr. Thurman suggested. On April 15, 2002, for instance, TDDS employee Mike Austin performed a vocational assessment and concluded that Plaintiff could perform light work. (Tr. at 125). Likewise, on March 27, 2002, a TDDS physician performed a physical RFC

---

[4](*See also* tr. at 506 (nurse practitioner Rhinehart stating that, "it is expected that she may be able to work once her blood sugar is controlled)).

12

assessment, and, among other findings, he found that: plaintiff could lift twenty pounds occasionally; Plaintiff could lift ten pounds frequently; Plaintiff could stand and/or walk about six hours in an eight hour workday; Plaintiff could sit about six hours in an eight hour workday; Plaintiff could occasionally climb, balance, stoop, kneel, crouch, and crawl; and, Plaintiff suffered no manipulative limitations, despite the peripheral neuropathy. (Tr. at 296–98). These findings are also consistent with light work. *See* 20 C.F.R. § 404.1567(b).

Because it was not a "medical opinion," *see* 20 C.F.R. § 404.1513(d)(1), neither the regulations nor judicial precedent required the ALJ to give any increased deference to King's August 2000 physical assessment in this case. *C.f. Riddle v. Sec'y of Health & Human Servs.*, No. 89-3931, 1990 U.S. App. LEXIS 9834, at *7–8 (6th Cir. June 15, 1990) (unpublished per curiam opinion). In addition, the ALJ's decision to reject that assessment in reliance on contrary evidence in the record was within a zone of permissible administrative choice that the court must respect. *See Buxton v. Halter*, 246 F.3d 762, 772–73 (6th Cir. 2001). For both of these reasons, Plaintiff's reliance on King's August 2000 assessment, (Tr. at 323–326), to support reversal is unsustainable.

### C.

Third, Plaintiff asserts that the ALJ improperly rejected the November 29, 2001, opinion of Dr. Louis Cunningham, M.D., a cardiologist, that Plaintiff was limited to lifting less than ten pounds. Pl.'s Br. at 7; (Tr. at 258).

On March 10, 2001, Plaintiff suffered a heart attack. (Tr. at 162). Three days later,

Plaintiff underwent triple bypass surgery.  (*Id.*).  Upon her discharge, Dr. Cunningham diagnosed Plaintiff with "acute inferior wall myocardial infarction, significant 3-vessel coronary artery disease, and diabetes mellitus."  (*Id.*).  Dr. Cunningham continued to treat Plaintiff on a quarterly basis during her period of cardiac rehabilitation.  (Tr. at 259, 260).  On November 29, 2001, Dr. Cunningham wrote a letter to the Disability Determination Section of the Tennessee Department of Human Services, diagnosing her with "atherosclerotic heart disease, diabetes mellitus type I, and asthma."  (Tr. at 258).  He stated that Plaintiff was being treated with medications, diet, and exercise, and he listed her prognosis as "fair."  (*Id.*).  Finally, he stated that her functional status was limited to lifting no more than 10 pounds and no exposure to extreme temperatures.  (*Id.*).

The ALJ concluded that, "the record since [Dr. Cunningham's November 2001 assessment] does not support the lifting restriction *following recovery from heart surgery*."  (Tr. at 21) (emphasis added).  The Commissioner contends that the ALJ's reasoning on this point is unassailable because "the ALJ cited significant medical evidence to support his finding."  Comm'r Br. at 5.  Plaintiff, on the other hand, accuses the ALJ of "assum[ing] the role of medical expert" by opining as to whether Plaintiff had or had not recovered from heart surgery when Dr. Cunningham imposed the lifting restriction.  Pl.'s Br. at 7.

As the Commissioner concedes, *see* Comm'r Br. at 6, Dr. Cunningham's lifting restriction was a treating source's medical opinion and was entitled to controlling weight to the extent that the restriction was "supported by sufficient clinical findings and . . . consistent

14

with the evidence." 20 C.F.R § 404.1527; *Cutlip v. Sec'y of Health & Human Servs.*, 25 F.3d 284, 287 (6th Cir. 1994); *Sizemore v. Sec'y of Health & Human Servs.*, 865 F.2d 709, 711–712 (6th Cir. 1988). The ALJ was bound, both by the regulations and by case law, "to give good reasons" in justification for his rejection of Dr. Cunningham's restriction. *Wilson v. Comm'r of Soc. Sec.*, 378 F.3d 541, 544 (6th Cir. 2004) (citing the regulations and noting that, "[i]t is an elemental principle of administrative law that agencies are bound to follow their own regulations"). The ALJ's articulated reasons for rejecting the restriction in this case were not "good," however, and the rejection cannot be sustained on any alternative basis in the record.

To defend the ALJ's treatment of the lifting restriction, the Commissioner cites several generalizations that were offered by various sources regarding Plaintiff's rehabilitation status post bypass surgery. First, on April 16, 2001, John T. Matthews, M.D., the surgeon who performed the bypass procedure, wrote a letter stating that,

> . . . As you know, Ms. Martinez underwent a triple coronary bypass one month ago. Since leaving the hospital, Ms. Martinez has done *very well*. She has had no recurrence of angina. She has been *reasonably active*. She is tolerating her diet well.
>
> . . . Ms. Martinez appears to be *well recovered*. . . .
>
> . . . I am very pleased with the progress that she has made. . . .

(Tr. at 188) (emphases added). Next, after his December 19, 2001 consultative examination, Dr. Thurman from TDDS opined that, (1) Plaintiff's chest pains were not "critically

limiting;" (2) she had achieved "good results" from her bypass surgery as of the date of the consultation; and (3) her heart examination was "normal." (Tr. at 171); Comm'r Br. at 6. Almost three years after her heart surgery, one of Plaintiff's physicians referred to her post coronary artery bypass condition as "stable" and found her X-ray and electrocardiogram results "unremarkable." (Tr. at 544).

Thomas J. Salvucci, D.O., who replaced Dr. Cunningham as Plaintiff's treating cardiologist in the summer of 2002, made similar generalizations about Plaintiff's post-operative response to the triple bypass. On June 5, 2002, after his very first visit with Plaintiff, Dr. Salvucci commented that, "[i]t sounds like she is doing reasonably well." (Tr. at 510). On September 4, 2002, Dr. Salvucci noted, "[t]his patient is doing quite well." (Tr. at 514). He also recommended that she walk on a treadmill for a total of thirty minutes per day, three days per week. (Tr. at 515). On March 19, 2003, he described Plaintiff as "doing very well." (Tr. at 516). Finally, on October 15, 2003, Dr. Salvucci wrote,

> . . . She is doing *quite excellent* from a cardiac perspective. There has been [no] *chest pain* or *shortness of breath*. She denies any *light headed spells or syncope*. She has been *very active*.

(Tr. at 517). The foregoing statements, according to the Commissioner, constitute "significant medical evidence" that undermined Dr. Cunningham's lifting restriction.

The Commissioner is, and the ALJ was, wrong to attach such medical significance to these generalizations in rejecting completely the lifting restriction imposed by Dr. Cunningham in November 2001. First, nothing in the record supports the ALJ's implicit opinion that Plaintiff experienced substantial improvement, relative to her weight-lifting

16

abilities, *after* November 2001.  Indeed, by as early as April of 2001 it was said that Plaintiff was "well-recovered" from bypass surgery.  (Tr. at 188).  Thus, as Plaintiff points out, the ALJ's rejection of the lifting restriction cannot be upheld on the basis that she had not "recovered" by November of 2001.  Second, none of the post-November 2001 statements contradicted or otherwise discredited Dr. Cunningham's restriction—they merely recognized that, *relatively speaking*, Plaintiff had "done well" post-heart surgery.  The subject of lifting was not even addressed.

Because (1) the ALJ's articulated "reason" (*i.e.*, that Plaintiff "did well" after November 2001) for rejecting Dr. Cunningham's lifting restriction was insufficient, and because (2) no substantial evidence otherwise supports the ALJ's decision to reject the restriction, the court holds that the ALJ should have incorporated the restriction into his ultimate physical RFC finding.

### D.

Plaintiff's fourth argument is that the ALJ arbitrarily rejected the light work assessment that was rendered by a TDDS consultant on March 27, 2002.  Pl.'s Br. at 8; (Tr. at 295–302).  The ALJ explained his decision on that issue by stating,

> The assessment for light work activity is not accepted as valid or consistent with the evidence as a whole.

(Tr. at 21).  Other than this conclusory statement, the ALJ's opinion contains no separate discussion of the TDDS assessment.  Although the ALJ was not required to discuss "every piece of evidence," *see, e.g., Thacker v. Comm'r of Soc. Sec.*, 99 Fed. App'x 661, 665 (6th

17

Cir. May 21, 2001) (unpublished opinion), pursuant to Social Security Ruling 96-6p the ALJ was bound to explain the weight he gave to the opinion of a state agency consultant. SSR 96-6p. The Commissioner attempts to mitigate this error by speculating that, "the evidence that weighs against the assessments of Dr. Winkler, Mr. King, and Ms. Rhinehart is the same evidence that weighs against the consulting physician's opinion." Comm'r Br. at 7. The court finds no support for this proposition. For one, the ALJ never relied on the Commissioner's theory in "explaining" the weight given to the consultant's opinion. (Tr. at 21). Second, the ALJ's argumentative statement that the "evidence as a whole" did not support the consultant's opinion, *see* Comm'r Br. at 7, is of little benefit to the court for the purpose of reviewing the decision below. Most important, though, the Commissioner's same-evidence theory presumes a similarity between the light work assessment and the "assessments" of Dr. Winkler, Mr. King, and Ms. Rhinehart, that simply does not exist. (*Compare, e.g.*, tr. at 324 (limiting Plaintiff to a total of *one* hour of standing per eight hour day) *with* tr. at 296 (finding that Plaintiff could stand and/or walk for a total of *six* hours in an eight hour day)).

The ALJ's failure to explain his decision to reject the light work assessment, coupled with the Commissioner's failure to provide a persuasive *post hoc* rationale, preclude the court from affirming the ALJ on this issue. Given Dr. Cunningham's lifting restriction, however, the ALJ's failure to discuss the light work assessment makes no difference.[5]

---

[5]To illustrate, assume that the ALJ had complied initially with this court's ruling that he was bound by Dr. Cunningham's ten pound lifting restriction. If he had done so, he necessarily would have rejected the light work assessment, for that assessment assumed Plaintiff capable of lifting up to twenty pounds at a time. *See* 20 C.F.R. §

E.

The ALJ determined that, despite all of her medically determinable exertional impairments, Plaintiff retained the physical RFC to perform the full range of medium work. (Tr. at 872).  According to the regulations, medium work involves lifting "no more than 50 pounds at a time with frequent lifting or carrying of objects weighing up to 25 pounds."  20 C.F.R. § 404.1567.  Plaintiff maintains that this finding is not supported by substantial evidence because it rests upon the ALJ's erroneous evaluation of the medical record.  Pl.'s Br. at 8.

The court has already determined that the ALJ properly evaluated and was not required to follow the statements of Dr. Winkler, Mr. King, and Ms. Rhinehart.  In contrast, the ten pound lifting restriction imposed by Dr. Cunningham did deserve controlling weight in this case.  Because the ALJ's finding that Plaintiff could perform medium work cannot be reconciled with Dr. Cunningham's controlling ten pound lifting restriction, the court concludes that the ALJ's physical RFC finding is not supported by substantial evidence in the record as a whole.

III.

Plaintiff also challenges the ALJ's RFC finding with respect to her mental limitations caused by depression.  Pl.'s Br. at 8.  To buttress that challenge, Plaintiff refers to the ALJ's

---

404.1567(b).  Thus, under the court's ruling, the ALJ's treatment of the light work assessment, though improper, did not prejudice Plaintiff.

comment that "the impairment of mental function by reason of depression was generally mild to moderate and never serious." (Tr. at 20); Pl.'s Br. at 8. Such a characterization of Plaintiff's depression is said to be in conflict with her psychiatrist's repeated diagnosis of "Major Depression d/o Severe, Recurrent," Pl.'s Br. at 8; (see, *e.g.,* tr. at 708), and with the fact that Plaintiff's Global Assessment of Functioning ("GAF") scores never exceeded 50 between 2001 and 2004, Pl.'s Br. at 8 (citing tr. at 214, 745, 753, 789, 816). (*See also* tr. at 286).[6]

As the Commissioner rightly points out, the issue is not whether the ALJ should have been more sensitive in his "characterization" of Plaintiff's depression.[7] Instead, the court's duty is limited to reviewing the ALJ's findings of fact and his application of the legal standards to those facts. *See Garner v. Heckler*, 745 F.3d 383, 387–388 (6th Cir. 1984). What matters here, then, is not the ALJ's personal belief that Plaintiff's depression was "never serious," (Tr. at 20) but his factual *finding* that she could perform "the basic mental demands of competitive, remunerative work on a sustained basis which includes the ability to understand, carry out, and remember simple instructions; respond appropriately to supervision, coworkers, and usual work situations; and deal with changes in a routine work setting[,]" (Tr. at 21). When the issue is so viewed, Plaintiff's reliance on her diagnosis and on her GAF scores are insufficient grounds upon which to reverse the ALJ's finding of fact.

---

[6]On January 15, 2002, Plaintiff was admitted involuntarily to the Henry County Medical Center because of suicidal ideation. Her GAF score on that date was 30. (Tr. at 286).

[7]Were sympathy the issue, the court would have no difficulty reversing this particular case and awarding benefits without remand.

First, that Plaintiff was diagnosed with and suffers from "Major Depression d/o Severe, Recurrent," while undisputed and confirmed by the record, (*see, e.g.*, tr. at 246, 244, 240, 239, 237, 236, 234, 233, 231, 230, 228, 226, 225, 715, 223, 222, 221, 219, 216, 214, 213, 211, 210, 209, 208, 207, 206, 720, 203, 201, 200, 199, 197, 733, 734, 736, 735, 737, 738, 740, 710, 748, 753, 711, 758, 764, 766, 768, 773, 780, 781, 783, 789, 787, 786, 784, 709, 791, 794, 795, 800, 708, 799, 804, 803, 802, 807, 808, 809, 814, 815, 821, 824, 825, 826), clearly does not discharge Plaintiff's duty of proving that she cannot perform her past relevant work. *C.f. Houston v. Sec'y of Health & Human Servs.*, 736 F.2d 365, 366–367 (6th Cir. 1984) ("The diagnosis of multiple impairments in appellant's hospital records, however, did not automatically entitle appellant to benefits, absent proof of sufficient duration and disabling *effect*."). Second, in determining the disabling effect caused by Plaintiff's depression, the ALJ did not have to agree with Plaintiff's declaration that "five GAF scores ranging from 45 to 50 over a three year period indicate extreme psychiatric impairment commiserate with total disability." Pl.'s Br. at 8. "While a GAF score may be of considerable help to the ALJ in formulating the RFC, *it is not essential to the RFC's accuracy*." *Howard v. Comm'r of Soc. Sec.*, 276 F.3d 235, 241 (6th Cir. 2002) (emphases added). Here, the ALJ acknowledged the GAF scores but did not agree that the record supported a finding of "total disability" based on those scores alone. (Tr. at 20).

Other than the diagnosis and the GAF scores, neither of which were "essential" to an accurate RFC, Plaintiff offers no purported basis for overturning the ALJ's mental RFC

determination. The court can discern no such basis from the record either. None of Plaintiff's treating sources ever rendered a "medical opinion" as to the alleged disabling effect of Plaintiff's depression. In addition, the ALJ's mental RFC finding is consistent with the mental RFC assessments that are found in the administrative record.

For example, on April 12, 2002, one TDDS physician concluded that, despite Plaintiff's depression: she was limited only moderately in her ability to understand and remember detailed instructions; she was limited only moderately in her ability to carry out such instructions; she was limited only moderately in her ability to maintain attention and concentration for extended periods; she was limited only moderately in her ability to perform activities within a schedule, to maintain regular attendance, and to be punctual within customary tolerances; she was limited only moderately in her ability to interact appropriately with the general public; and, she was limited only moderately in her ability to respond appropriately to changes in the work setting. (Tr. at 317–318). In all other areas of understanding and memory, sustained concentration and persistence, social interaction, and adaptation (fourteen other areas), Plaintiff was considered not to have *any* significant limitations of function as a consequence of depression. (*Id.*).

On January 9, 2002, Dan Emerson, M.S., and Dennis Wilson, Ph.D., performed a psychological evaluation of Plaintiff that included a "Medical Assessment of Ability to Do Work Related Activities (Mental)." (Tr. at 281–285). They diagnosed Plaintiff with a dysthymic disorder and a personality disorder NOS (passive-aggressive type). (Tr. at 285).

With respect to the disabling effects of these mental impairments, they found that: Plaintiff was limited only moderately in her ability to understand and remember; Plaintiff was not limited significantly in her ability to sustain concentration and persistence; Plaintiff was limited only moderately in her ability to socially interact; and, Plaintiff was limited only moderately in her ability to adapt.  (Tr. at 284).

The ALJ relied on these assessments in finding that Plaintiff failed to prove that her depressive disorder precluded her from performing the basic mental demands of competitive, remunerative work on a sustained basis.  Because Plaintiff makes no effort to challenge the accuracy of the assessments themselves,[8] the court must conclude that the ALJ's reliance on them was proper and that Plaintiff did not meet her evidentiary burden on this issue.

IV.

Finally, Plaintiff asserts that the ALJ's hypothetical examination of the vocational expert was tainted by the ALJ's alleged erroneous evaluation of the medical record.  Pl.'s Br. at 9.  The court has already upheld the ALJ's evaluation of the medical record except for his rejection of the ten pound lifting restriction imposed by Dr. Cunningham.[9]  Although the Commissioner does not agree that the ALJ was required to accept Dr. Cunningham's restriction, Comm'r Br. at 9, the Commissioner does not dispute the general rule that "for a

---

[8]Not once in her brief or in her reply brief did Plaintiff contend that her diagnosis and GAF scores "refuted" these crucial assessments, even though they formed the basis for the ALJ's "finding of fact."  *See* Pl.'s Reply at 5.

[9]The court also determined that the ALJ failed to explain his rejection of a state agency assessment for light work.  *See supra* at 19.

response to a hypothetical to constitute substantial evidence, each element of the hypothetical must accurately describe the claimant[,]" *Felisky v. Bowen*, 35 F.3d 1027, 1036 (6th Cir. 1994) (citing *Varley v. Sec'y of Health & Human Servs.*, 820 F.2d 777, 779 (6th Cir. 1987) and *Bradshaw v. Heckler*, 810 F.2d 786, 790 (8th Cir. 1987)).

Here, the ALJ posed the following hypothetical to the vocational expert:

> QUESTION: Dr. Doss, I want you to assume that we have a 43 year old individual who graduated high school, attended 18 months of college, received no degree, graduated from a business school, also graduated in 1998 from the Tennessee Technology Center with a study in business administration; it seems she can read and write, she can add and subtract. Assume that her past work has been the same work that the Claimant has performed with the skill levels and exertional levels described by you. And the, Doctor, I want you to assume this person could do a full range of medium work and that she has a moderate limitation in the ability to remember and carry out simple job instructions and the ability to socially interact. Would the individual I described for you be able to [do] any of her past relevant work.

> ANSWER: Yes, sir, all of the past work would be available with those limitations.

(Tr. at 871–872). Based on the court's ruling that the ALJ should have given controlling weight to Dr. Cunningham's ten pound lifting restriction, the assumption that the hypothetical person described in the ALJ's question could perform the full range of medium work was improper. *See* 20 C.F.R. 404.1567(g) (defining medium work as involving "lifting no more than 50 pounds at a time with frequent lifting or carrying of objects weighing up to 25 pounds"). The ALJ should have incorporated the ten pound lifting restriction into his description of the hypothetical person.

If all of Plaintiff's past relevant work had required the exertional ability to lift more than ten pounds, then the conclusion that Plaintiff' retained the RFC to perform the physical

24

demands of her past relevant work would constitute reversible error. Yet, not all of Plaintiff's past relevant work was so physically demanding. The vocational expert testified, for instance, that Plaintiff had worked as a secretary and as a receptionist in 1998. (Tr. at 853). Both of these jobs are classified as "sedentary," which "involves lifting no more than ten pounds at a time." 20 C.F.R. § 404.1567. Although Plaintiff testified that she did not work "long at all" in these positions, (Tr. at 852), Plaintiff has not argued and the vocational expert did not testify that the amount of time Plaintiff did work as a secretary and/or receptionist was an insufficient amount of time to make those jobs "relevant work." *See Robinson v. Sec'y Health & Human Servs.*, No. 87-1775, 1988 U.S. App. LEXIS 14524, at *8 (6th Cir. Oct. 26, 1988) (unpublished per curiam opinion); 20 C.F.R. § 404.1650(b)(1) (past work is only relevant if performed long enough for the claimant to learn how to do it); SSR 82-62 (the duration requirement depends on the nature and complexity of the work at issue).

The court is mindful of the need to avoid "convert[ing] judicial review of agency action into a ping-pong game." *NLRB v. Wyman-Gordon Co.*, 394 U.S. 759, 766 n.6 (1969); *Wilson v. Comm'r of Soc. Sec.*, 378 F.3d 541, 547 (6th Cir. 2004). To remand on the sole ground that the ALJ failed to incorporate Dr. Cunningham's lifting restriction would ignore the fact that Plaintiff's previous jobs as receptionist and secretary, though performed only briefly, are consistent with that restriction. Accordingly, the court finds this error harmless.

Substantial evidence exists to support the finding that Plaintiff failed to prove she

could not perform her past relevant work as a secretary or receptionist, both of which are consistent with a ten pound lifting restriction.

V.

For the reasons set out above, the Commissioner's final decision finding Plaintiff capable of performing her past relevant work as a secretary or a receptionist is AFFIRMED. The Clerk is directed to enter judgment accordingly.

IT IS SO ORDERED.

　s/ **James D. Todd**　　　　　　　　　
JAMES D. TODD
UNITED STATES DISTRICT JUDGE

26